J-A22029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA B. GRADY, AS EXECUTRIX AND PERSONAL REPRESENTATIVE OF THE ESTATE OF STEPHEN P. GRADY | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 53 MDA 2021 |
| AERO-TECH SERVICES, INC. D/B/A AERO-TECH SERVICES AND ZACH HURST & DAVID PEACHEY, INDIVIDUALLY | : : : : : | |

Appeal from the Order Entered December 22, 2020
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-20-03159

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED: MARCH 8, 2022**

Appellant, Patricia B. Grady, as executrix and personal representative of the Estate of Stephen P. Grady, appeals from the order entered on December 22, 2020. The December 22, 2020 order sustained the preliminary objections in the nature of a demurrer that were filed by Aero-Tech Services, Inc. d/b/a Aero-Tech Services ("Aero-Tech"), Zach Hurst, and David Peachey (hereinafter, collectively, "the Defendants") and dismissed Appellant's complaint. We affirm.

On April 4, 2020, Appellant filed a complaint against the Defendants. The trial court thoroughly summarized the factual allegations and averments in Appellant's complaint:

[Appellant,] Patricia Grady[,] is the widow of Stephen Grady[; Stephen Grady] died in an airplane crash on April 19, 2018. The aircraft involved in the accident which is the subject of this litigation was a 2001 Cirrus SR22 G1, registration number N451TD, serial number 0064 ("Cirrus aircraft") owned and piloted by James J. Durkin, the pilot in charge of the aircraft ("PIC Durkin"). Stephen Grady was the only passenger on board the Cirrus aircraft on April 19, 2018. Stephen Grady was not trained as a pilot, nor did he have experience operating aircraft. The Cirrus aircraft was operated solely by PIC Durkin on April 19, 2018 under the provisions of 14 C.F.R. Part 91 as a personal flight. The Cirrus aircraft departed the Lancaster Airport at 7:34 a.m. with a destination of South Bend, [Indiana]. The Cirrus aircraft crashed in rural central Pennsylvania at approximately 8:44 a.m.  Prior to the commencement of the flight, PIC Durkin filed an Instrument Flight Rules ("IFR") flight plan and he had the appropriate certificates and recent instrument flight experience to operate the Cirrus aircraft under IFR on the date of the accident. The Cirrus aircraft was not certified for flight in known icing conditions.

[In 2011, PIC Durkin began taking flight instruction with Defendant Aero-Tech.  Defendant Aero-Tech "is in the business of providing initial and recurrent flight training programs[,] as well as classroom training for a variety of general aviation and business aircraft."  It employed both Defendant Hurst and Defendant Peachey as Certificated Flight Instructors ("CFI").]

On September 5, 2012, PIC Durkin passed his "private pilot check ride," which is the aerial practicum required prior to obtaining a private pilot license.  [PIC Durkin began taking instruction for Instrument Rating certification with Defendant Aero-Tech on September 14, 2012.  This certification would "enable him to operate an airplane during instrument meteorological conditions."  "Most, if not all of the flight instruction for the Instrument Rating certification was conducted by Defendant Peachey."]

PIC Durkin first flew the aircraft involved in the accident on January 31, 2014 and on that same day, PIC Durkin's logbook notes that he received instruction titled "Cirrus demo/intro."

On April 1, 2014, Durkin passed his Instrument Rating check ride permitting him to operate under IFR. Between January 31, 2014 and April 19, 2018, PIC Durkin's logbook contains approximately [90] logged training flights. PIC Durkin flew the Cirrus aircraft exclusively from April 9, 2014 until April 19, 2018. In the six months prior to the accident, PIC Durkin received flight instruction on at least six occasions from Defendant Peachey, Defendant Hurst, or other unknown instructors employed by Defendant Aero-Tech.

The Cirrus aircraft was equipped with an S TEC 55 autopilot and with a Cirrus Ballistic Parachute System known as ["CAPS"]. [CAPS] is designed to prevent uncontrolled flight into terrain in the event of serious and unrecoverable control issues during flight. [CAPS] consists of a ballistic rocket-fired parachute that extracts a large, rotund parachute attached to the airframe of the aircraft. When utilized properly, [CAPS] has been shown to drastically reduce pilot and passenger fatalities. The Pilot's Operating Handbook ("POH") for the Cirrus aircraft at "Normal Procedures, Pre-flight walk-around" states at item 1 to remove the safety pin on the CAPS activation handle. The removal of the safety pin from the CAPS activation handle is the first step that must be taken by a pilot when entering the cabin and beginning the preflight check of the aircraft. The POH for the Cirrus aircraft also states at the "Before Starting Engine" checklist to verify the removal of the safety pin from the CAPS handle. After the pilot completes preflight actions and when the aircraft is ready for departure, the POH for the Cirrus aircraft lists as the first item on the "before takeoff checklist" to verify that the pin has been removed from the CAPS handle. The wreckage of the Cirrus aircraft showed that the safety pin remained in the CAPS parachute handle, exhibiting that PIC Durkin did not remove the pin when executing his preflight checklist. Accordingly, [CAPS] was not able to be activated by PIC Durkin prior to impact.

The Cirrus Flight Operations Manual for instructors provides that if the pilot has loss of aircraft control, the pilot must immediately[:] 1) attempt manual recovery if able, or 2) engage autopilot if within limits, or 3) activate CAPS. On April 19, 2018, PIC Durkin was unable to manually recover control after losing control of the Cirrus aircraft in a left turn. PIC Durkin did not engage the autopilot, nor did he activate the

CAPS after losing control of the Cirrus aircraft in the left turn.
. . .

[Appellant alleged] that Defendants Peachey and Hurst failed to teach [CAPS] to PIC Durkin and that[,] had Defendants Peachey and Hurst correctly taught [CAPS] to PIC Durkin, PIC Durkin would have had the option of immediately deploying the lifesaving CAPS [] when he lost control of the Cirrus aircraft in the left turn on April 19, 2018. [Appellant] also [alleged] that had either Defendant Peachey or Defendant Hurst taught PIC Durkin to engage the autopilot in loss of control situations, the fatal accident on April 19, 2018 would not have occurred.

Trial Court Opinion, 5/1/21, at 3-5.

Appellant claimed that the Defendants were negligent in that they failed to properly instruct PIC Durkin in the use and operation of both CAPS and the autopilot on the Cirrus aircraft and that Defendant Aero-Tech was negligent in failing to ensure that its flight instructors were qualified to train PIC Durkin in the use of CAPS.

The Defendants filed preliminary objections to Appellant's complaint. As is relevant to the current appeal, the Defendants claimed that Appellant's complaint failed to set forth a valid cause of action and must be dismissed, as the complaint solely alleged that the Defendants committed educational malpractice – which is a tort that is not recognized in Pennsylvania. **See** Defendants' Preliminary Objections, 4/29/20, at 5-6.

On December 22, 2020, the trial court sustained the Defendants' preliminary objection in the nature of a demurrer and dismissed Appellant's complaint. Trial Court Order, 12/22/20, at 1-2. As the trial court held: "[Appellant's] complaint fails as a matter of law as it is solely based upon a

theory of educational malpractice against the Defendants. Pennsylvania courts have not permitted cases of negligence resulting from alleged educational malpractice to persist." *Id.* at 1 n.1.

Appellant filed a timely notice of appeal; Appellant raises one claim to this Court:

> Whether the [trial court] erred in granting Defendant[s'] preliminary objections in the nature of a demurrer when all of the well-pled facts support a legally sufficient cause of action sounding in negligence, where the educational malpractice doctrine should not be applied to specialized training for ultra-hazardous activities and when public policy supports holding such training facilities accountable for failing to adequately train pilots resulting in fatalities that would otherwise be avoided[?]

Appellant's Brief at 6 (some capitalization omitted).

We have stated:

> A preliminary objection in the nature of a demurrer is properly sustained where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.
>
> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been

- 5 -

an error of law or abuse of discretion. When sustaining the preliminary objections will result in the denial of claim or a dismissal of suit, the preliminary objections may be sustained only where the case is free and clear of doubt.

***Hill v. Ofalt***, 85 A.3d 540, 547-548 (Pa. Super. 2014) (quotation marks, citations, and corrections omitted).

On appeal, Appellant acknowledges: that her negligence claims sound in educational malpractice; that Pennsylvania courts have not recognized negligence claims sounding in educational malpractice; and, that Pennsylvania law does not permit educational malpractice claims to succeed against traditional educational institutions. ***See*** Appellant's Brief at 17, 26, and 48. Nevertheless, Appellant contends that she has stated a valid cause of action because students, such as PIC Durkin, pay flight schools to teach them a precise activity, which Appellant contends is ultrahazardous, and because Appellant specifically alleged that: the accident was caused by PIC Durkin's failure to engage CAPS; the Defendants were negligent in failing to teach CAPS to PIC Durkin; and, Defendant Aero-Tech was negligent in failing to ensure that its flight instructors were qualified to train PIC Durkin in the use of CAPS. ***See*** Appellant's Brief at 17, 20, 47, and 49.

Appellant's claims fail for the reasons stated in the well-written and scholarly opinion of the able trial court judge, the Honorable Leonard G. Brown. Therefore, we affirm on the basis of Judge Brown's thorough, March 1, 2021, opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Brown's March 1, 2021 opinion.

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/8/2022</u>